IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ANTIONE R. RIDGEWAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-1970-JPG-RJD |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., DR. | ) | |
| DENNIS LARSON, GARY GERST, DR. | ) | |
| JOHN DOE, and NURSE JANE DOE, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

**DALY, Magistrate Judge:**

The matter has been referred to United States Magistrate Judge Reona J. Daly by United States District Judge J. Phil Gilbert pursuant to 28 U. S. C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997(e)(a).  It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law, and **GRANT IN PART AND DENY IN PART** the Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendants Gerst, Larson, and Wexford (Doc. 25).

### FINDINGS OF FACT

Plaintiff Antione Ridgeway, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), brings this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Big Muddy Correctional Center ("Big Muddy"). Plaintiff alleges he suffered a torn left Achilles tendon for which he was denied adequate and

timely medical treatment.   Plaintiff is proceeding in this action on claims of deliberate indifference and negligence against Wexford Health Sources, Inc., Dennis Larson, Gary Gerst, and John and Jane Doe.

Defendants Wexford, Larson, and Gerst filed a motion for summary judgment arguing Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit.

Defendants contend Plaintiff only submitted two grievances regarding the injury at issue in this lawsuit, and argue that Plaintiff failed to exhaust his administrative remedies for both of these grievances.   In particular, Defendants assert that the grievances were not submitted in a timely manner to address the treatment at issue in this lawsuit.   Defendants also note that the grievances do not mention or describe Wexford in any way.

The relevant grievances in the record are set forth as follows:

1.   **August 3, 2017 Grievance** (Doc. 26-1 at 12-13):   In this grievance, Plaintiff explains he was injured on April 24, 2017 while playing basketball.   Plaintiff recounts medical treatment rendered by the nurse (Jane Doe) on April 25, 2017.   Plaintiff also explains he was seen by a nurse practitioner (Gerst) about a week after the injury occurred.   Plaintiff asserts he received an x-ray and then he filed a grievance because it had been about two months since he was injured and he had not yet seen a doctor.   Plaintiff writes that "after filing [his] first grievance" (which he has not received a response to), he was called to the doctor.   The doctor (Dr. Larson) submitted a referral for an MRI, but it was denied. Plaintiff requests an MRI and surgery for his injury.   Plaintiff's counselor received and responded to this grievance on November 9, 2017.   The Grievance Officer recommended that it be denied on November 16, 2017, and the CAO concurred on November 16, 2017. The ARB received this grievance on November 30, 2017, and returned it without a decision on the merits on December 7, 2017.   The ARB indicated that it was returned because there was no date cited in the grievance within the required 60-day timeframe.

2.   **September 6, 2017 Emergency Grievance** (Doc. 26-1 at 14-15):   In this grievance, Plaintiff again recounts the injury he sustained in April 2017 and the medical treatment (or lack thereof) that he received thereafter.   This grievance recounts the medical treatment addressed in Plaintiff's August 3, 2017 grievance, and also references treatment rendered after submission of the earlier grievance.   Specifically, Plaintiff explains he received an ultrasound for his heel on July 19, 2017, and was again referred for an MRI.   On August

15, 2017, Plaintiff received an MRI and was told that his Achilles was torn.   Plaintiff was then referred to an orthopedic specialist who indicated that he should have had surgery within seven days of his injury.   The CAO found that an emergency was not substantiated on September 22, 2017.   The grievance was rejected as a duplicate by Plaintiff's counselor on November 9, 2017.   The grievance was received by the ARB on November 30, 2017. It is not clear whether the ARB's response to Plaintiff's August 3, 2017 grievance was also intended to be a response to the September 6, 2017 grievance.

Plaintiff asserts he submitted a grievance following his initial appointment with the nurse after he sustained his injury.   Plaintiff notes that he refers to this grievance in his August 3, 2017 grievance.   Plaintiff asserts he never received any response to this grievance.   Plaintiff argues this grievance was submitted within 60 days of seeing Defendant Gerst and Defendant Nurse Jane Doe and thus, exhaust his claims against these Defendants.

Plaintiff further contends that his August 3, 2017 grievance complained of a continuing violation and, therefore, should exhaust his claims against all defendants in this lawsuit.   For this reason, Plaintiff contends the rejection of the August 3, 2017 grievance was improper.

Pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the Court held a hearing on the issue of exhaustion on December 2, 2019.   At the hearing, Plaintiff was uncertain as to whether he submitted a grievance prior to August 3, 2017 and, if so, when such grievance was submitted. With regard to his August 3, 2017 grievance, Plaintiff testified he remembered submitting it to the counselor on August 3, 2017 because he submits grievances on the same day that he signs and dates them.   The counselor, however, indicated the grievance was received on November 9, 2017.

Plaintiff also testified that he first saw PA Gerst for his injury sometime in May 2017. Plaintiff did not see Gerst after May 2017.   Plaintiff then saw Dr. Larson, and requested an MRI and a surgical consultation.   Dr. Larson submitted a request to Wexford for an MRI, and the request was denied.   Dr. Larson resubmitted the request for an MRI and it was denied in July

2017.   Plaintiff testified it was in July 2017 that he learned he would not receive an MRI. Plaintiff then filed his August 3, 2017 grievance and, having not received any response, submitted his September 6, 2017 emergency grievance.

LEGAL STANDARDS

*Summary Judgment Standard*

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005).   The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).   *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004).   A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."   *Celotex,* 477 U.S. at 323.   "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."   *Id.*   The Seventh Circuit has stated that summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events."   *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

***Exhaustion Requirements under the PLRA***

The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).   Exhaustion of available administrative remedies is a precondition to suit.

*Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004).   *See also Perez v. Wis. Dept. of Corr.*,182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983).   Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006).   This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."   *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).   In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025.    In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies.   *Id.* 544 F.3d at 742.   If a Plaintiff has exhausted his remedies, the case will proceed on the merits.   If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter, depending in the circumstances.

***Exhaustion Requirements under Illinois Law***

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "[A]ll dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance within 60 days after the discovery of the incident, occurrence or problem, to his or her institutional counselor, unless certain discrete issues are being grieved. 20 ILL. ADMIN. CODE § 504.810(a). If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer — usually the Warden — within 2 months of receipt, "when reasonably feasible under the circumstances." *Id*. §504.830(e). The CAO then advises the inmate of a decision on the grievance. *Id.*

An inmate may appeal the decision of the Chief Administrative Officer in writing within 30 days to the Administrative Review Board for a final decision. *Id.* § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006). The ARB will submit a written report of its findings and recommendations to the Director who shall review the same and make a final determination within 6 months of receipt of the appeal. 20 ILL. ADMIN. CODE § 504.850(d) and

(e).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the Chief Administrative Officer.   *Id.* § 504.840.   If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender.   *Id.*   Inmates may further submit certain types of grievances directly to the Administrative Review Board, including grievances related to protective custody, psychotropic medication, and certain issues relating to facilities other than the inmate's currently assigned facility.   *Id.* at § 504.870.

CONCLUSIONS OF LAW

First, the Court does not find Plaintiff's assertion that he filed a grievance regarding the injury at issue prior to August 3, 2017 to be credible.   Plaintiff gave conflicting answers as to whether he filed such a grievance and was unable to indicate the date on which any such grievance was filed.   Plaintiff also made no mention of the contents of the grievance; therefore, even if the Court found Plaintiff was thwarted in his efforts to exhaust such a grievance (which it does not), the Court cannot find it exhausted the claims in this lawsuit.

The Court does find Plaintiff exhausted his administrative remedies as to his August 3, 2017 grievance prior to filing this lawsuit.   The Court notes the counselor did not date this grievance as "received" until November 9, 2017, but there is no evidence in the record to substantiate any claim Plaintiff waited until such time to submit his grievance.   Indeed, Defendants' assertion that Plaintiff's CHAMPS records indicate the grievance was received on September 19, 2017 contradicts the November 9, 2017 date.   Further, the counselor, grievance

officer, and warden responded to this grievance on the merits and made no mention of it being submitted out of time.   Although the ARB returned this grievance without a decision on the merits, such action does not appear to be warranted insofar as Plaintiff mentioned he had been on crutches for three months because his injury had not been properly treated.   Plaintiff indicates he had not been back to healthcare and that he was on an "island."   Thus, the ARB's determination that the grievance was submitted beyond the allowable timeframe was inapposite.   For this reason, the Court finds Plaintiff was thwarted in his efforts to exhaust the August 3, 2017 grievance.

The Court must also inquire, however, whether the grievance was sufficient to exhaust the claims in this lawsuit.   Defendants argue Plaintiff's August 3, 2017 grievance was written more than 60 days after he was evaluated by Jane Doe Nurse and PA Gerst and, as such, it was submitted outside the time limit imposed by the Illinois Administrative Code.   In response, Plaintiff asserts he was complaining of ongoing inadequate medical treatment and the Court should apply the continuing violation doctrine in finding the grievance exhausted Plaintiff's claims against Jane Doe Nurse and PA Gerst.

The continuing violation doctrine provides that prisoners do not need to file multiple, successive grievances when they are complaining about the same issue if it is continuing.   *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013).   In the deliberate indifference context, the Seventh Circuit has found that the refusal to treat a medical condition can be a continuing violation for each day that the prison authorities had the power to correct it.   *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001).   The allegations here, however, do not complain of a refusal to treat; rather, Plaintiff complains Nurse Jane Doe failed to adequately address his injury by failing to communicate her findings and failing to urgently refer Plaintiff to a physician and/or orthopedic

specialist after examining Plaintiff on or around April 25, 2017.   Similarly, Plaintiff alleges he

saw Defendant Gerst on or around May 30, 2017, and Gerst failed to make an urgent referral to a

physician, and also failed to request an MRI or other diagnostic imaging.   Thus, the crux of

Plaintiff's claims against Defendants Jane Doe and Gerst are their alleged failure to refer Plaintiff

for further evaluation by a physician.   Plaintiff's complaints are thus limited to the discrete

interactions Plaintiff had on the dates on which Jane Doe and Gerst evaluated him.   Further,

Plaintiff alleges he was seen by a physician on or around June 6, 2017 and, at that time, Larson

ordered an MRI of Plaintiff's injury.   Thus, the Court finds the complaints against Jane Doe and

Gerst were not "continuing," and Plaintiff could have (and should have) set forth the incidents

giving rise to his claims in a grievance within 60 days of seeing Nurse Jane Doe[1] and PA Gerst.

In other words, Plaintiff's examination by a physician intervened and interrupted any continuing

concern with the treatment provided by either Nurse Jane Doe or PA Gerst.   *Cf. Barrow v.*

*Wexford Health Sources, Inc.*, 2015 WL 11539508, *6 (July 16, 2015 S.D. Ill.) (finding the

plaintiff's complaints against the defendant medical provider addressed the totality of care and, as

such, the grievances complained of a continuing wrong to which the defendant provider was a

part).   Because the August 3, 2017 grievance was submitted more than 60 days after Plaintiff saw

Defendant Gerst and Jane Doe, the Court finds Plaintiff's claims of deliberate indifference against

these Defendants were not exhausted prior to filing this lawsuit.

The Court, however, finds the August 3, 2017 grievance sufficient to exhaust Plaintiff's

---

[1] Although Nurse Jane Doe has not yet been identified and is not represented, the Court finds summary judgment in
her favor is warranted.   There is no indication in the record or the filings that Plaintiff submitted any other exhausted
grievance, and the grievances in the record are not sufficient to exhaust the claims against Jane Doe based on the
allegations in the complaint.   Pursuant to Federal Rule of Civil Procedure 56(f), Plaintiff is notified that summary
judgment may and should be granted in favor of Nurse Jane Doe as to VIII.

claims against Dr. Larson.   Defendants admit Plaintiff saw Dr. Larson within 60 days of submitting this grievance.   Moreover, Plaintiff's treatment with Dr. Larson was ongoing and directly at issue in this grievance as Plaintiff was complaining that he had not received an MRI and had not received follow-up care since seeing Dr. Larson.

Finally, the Court considers whether this grievance exhausts Plaintiff's claims against Wexford.   In his complaint, Plaintiff sets forth claims against Wexford under the doctrine of *respondeat superior*, as well as policy and practice claims under *Monell*.   The Court finds no basis on which to allow Plaintiff to proceed on *respondeat superior* claims under § 1983, set forth in Counts II, IV, VI, and VIII.   Plaintiff asserts (in his complaint) that the Seventh Circuit Court of Appeals determined in *Shields v. Illinois Dep't of Corrections*, 746 F.3d 782 (7th Cir. 2014) that the principle that Wexford could not be held vicariously liable for the deliberate indifference of its employees was no longer an appropriate extension of the *Monell* doctrine.   The Court disagrees. Recently, in *Barrow v. Wexford Health Sources, Inc.*, -- F. App'x --, 2019 WL 5681378, *3 (7th Cir. 2019), the Seventh Circuit remarked that although it has questioned whether *Monell's* limitation on vicarious liability applies to private corporations, it has left its decision on this issue "undisturbed."   Accordingly, the undersigned recommends that claims of *respondeat superior* brought against Wexford in Counts II, IV, VI, and VIII be dismissed with prejudice.

With regard to the policy and practice claims set forth against Wexford in Count IX, the Court finds Plaintiff's August 3, 2017 grievance sufficient to exhaust such claims.   Notably, although the Illinois Administrative Code provides instructions for setting forth complaints against individuals, *see* ILCS § 504.810(c) ("The grievance shall contain factual details regarding each aspect of the offender's complaint, including … the name of each person who is the subject of or

who is otherwise involved in the complaint.   This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible."), it makes no mention of corporate entities such as Wexford.   "When the administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought."   *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002).   Here, the August 3, 2017 grievance set forth Plaintiff's complaints concerning his MRI denial and referral for a surgical consultation, which resulted in delayed care. Because the issues raised by Plaintiff in this grievance mirror the claims now pending against Wexford in Count IX, the Court finds Plaintiff's administrative remedies were exhausted.

The Court need not consider whether Plaintiff's September 6, 2017 emergency grievance was exhausted as it clearly suffers from the same defects as the August 3, 2017 grievance with regards to Defendants Nurse Jane Doe and PA Gerst, and the undersigned has already found Plaintiff exhausted his administrative remedies as to Defendants Larson and Wexford.

As a final note and for the sake of completeness, the Court acknowledges Defendants' request for dismissal from this cause of action.   Any such dismissal would be inappropriate as Plaintiff has stated claims in negligence under Illinois law, as well as Illinois statutory violations in Counts I, III, V, VII, and X.   These claims are not subject to the exhaustion requirements set forth in the PLRA and shall proceed.   42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions *under Section 1983 of this title, or any other Federal law* … until such administrative remedies as are available are exhausted.") (emphasis added).

## RECOMMENDATIONS

Based on the foregoing, it is hereby **RECOMMENDED** that:

Page **11** of **12**

- The Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendants Gary Gerst, PA, Dennis Larson, MD, and Wexford Health Sources, Inc. (Doc. 25) be **GRANTED IN PART AND DENIED IN PART**;

- Count VI against Defendant Gary Gerst be **DISMISSED WITHOUT PREJUDICE**;

- Summary judgment on the issue of exhaustion be **GRANTED** pursuant to Federal Rule of Civil Procedure 56(f) as to Count VIII against Defendant Nurse Jane Doe; and

- Wexford Health Sources, Inc. be **DISMISSED** from Counts II, IV, VI, and VIII

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto.   The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals.   *See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004).

**DATED: December 11, 2019**

s/ *Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**