UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANTOINE R. RIDGEWAY,

    Plaintiff,

    v.

WEXFORD HEALTH SOURCES, INC.,
DR. DENNIS LARSON, P.A. GARY
GERST, JOHN DOE M.D., and JANE DOE
LPN,

    Defendants.

Case No. 18-cv-1970-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on the Report and Recommendation ("Report") of Magistrate Judge Reona J. Daly (Doc. 41), who held an evidentiary hearing on the matter on December 2, 2019, pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). She now recommends that the Court grant in part and deny in part the motion for summary judgment filed by defendants Wexford Health Sources, Inc. ("Wexford"), Dr. Dennis Larson, and P.A. Gary Gerst (Doc. 25). Specifically, she recommends dismissing Count VI (an Eighth Amendment deliberate indifference claim) against Gerst and dismissing Counts II, IV, VI, and VIII (Eighth Amendment deliberate indifference claims under a *respondeat superior* theory) against Wexford. She further recommends granting summary judgment pursuant to Federal Rule of Civil Procedure 56(f) for Nurse Jane Doe on Count VIII (an Eighth Amendment deliberate indifference claim). Plaintiff Antoine R. Ridgeway has objected to the Report's recommendation regarding Nurse Jane Doe (Doc. 43).

The Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in a report and recommendation. Fed. R. Civ. P.

72(b)(3). The Court must review *de novo* the portions of the report to which objections are made. *Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

The Court has reviewed the portions of the Report to which Ridgeway does not object and finds no clear error. It will therefore adopt those portions. It now turns to the Report's recommendation to grant summary judgment pursuant to Rule 56(f) for Nurse Doe on Count VIII for failure to exhaust administrative remedies.

This case arose after Ridgeway, an inmate housed at Big Muddy River Correctional Center ("Big Muddy"), injured his left ankle on April 23, 2017. Viewing all disputed facts in Ridgeway's favor, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), the evidence reveals the following. On April 25, 2017, Ridgeway saw Nurse Doe at the Big Muddy healthcare unit and told her he believed he had torn his Achilles tendon. Nurse Doe said she would refer Ridgeway to a doctor but, in fact, made no urgent referral and did not communicate any findings to a doctor. Ridgeway first saw a doctor on June 6, 2017, who referred Ridgeway for an MRI. The MRI was refused multiple times under Wexford's "collegial review" process. Ridgeway made more visits to the healthcare unit, including on July 13, 2017, and on July 19, 2017, when he saw Nurse Doe, who advised him about the status of the MRI request. Ridgeway was eventually given an MRI on August 15, 2017, and diagnosed with a partial Achilles tendon tear but told that he should have had surgery within seven days of his injury. He now suffers permanent injuries because he did not have surgery promptly.

Ridgeway filed his first grievance related to his Achilles tendon problem on August 3, 2017 (Doc. 26-1 at 12-13), and subsequently advanced it to the ARB. The ARB ultimately

returned the grievance, finding it was not filed within 60 days of the conduct about which Ridgeway was complaining. Magistrate Judge Daly found that Ridgeway's efforts to exhaust his administrative remedies had been thwarted by the failure to note the correct date the grievance was received, causing the ARB to find it untimely. However, she found that the August 3, 2017, grievance, even if filed on that date, was more than 60 days after Nurse Doe's contact with Ridgeway in connection with his Achilles injury. She rejected Ridgeway's argument that Nurse Doe committed a continuing violation that took her conduct within the period of 60 days before August 3, 2017. Consequently, she recommended granting summary judgment for Nurse Doe on Count VIII because Ridgeway failed to exhaust his administrative remedies against her.

In his objection, Ridgeway reiterates his argument that Nurse Doe's conduct constituted a continuing violation that extended into the 60 days before his August 3, 2017, grievance. Ridgeway further argues that his visits with Nurse Doe on July 13 and 19, 2017, within 60 days of his August 3, 2017, grievance, should have made his grievance timely as to his claims against Nurse Doe.

*Continuing Violation Theory*

Ridgeway's continuing violation argument ignores the plain text of the administrative rule on grievances, which states, "A grievance must be filed with the counselor or Grievance Officer in accordance with the procedures in this Subpart, within *60 days after the discovery* of the incident, occurrence or problem that gives rise to the grievance." 20 Ill. Admin. Code § 504.810 (emphasis added). Thus, by the very terms of the administrative rule, in order to exhaust for Nurse Doe's conduct on April 25, 2017, Ridgeway must have grieved that conduct *within 60 days* of when he discovered the delinquency in his health care treatment and Nurse

3

Doe's participation in it. While it might have taken Ridgeway a short time to realize Nurse Doe had not requested urgent doctor care for Ridgeway—after all, it might take a while for him to catch on that something is *not* happening—it should have been apparent by June 4, 2017, 39 days later and the last day for which his August 3, 2017, grievance would have been timely. Thus, before June 4, 2017, a specific, discrete instance of conduct by Nurse Doe was apparent—the failure to arrange urgent doctor care—and Ridgeway should have filed his grievance within 60 days of his discovery of that conduct. It is this discrete instance of conduct for which Ridgeway is suing Nurse Doe. Grievance 1 ((Doc. 26-1 at 12); Compl. ¶¶ 13, 24 (Doc. 1 at 3, 21); *see Ramirez v. Young*, 906 F.3d 530, 539 (7th Cir. 2018) (noting that "many people assert that problems are ongoing, when the issue really stems from a discrete act that starts the clock running"). Ridgeway did not file his grievance within 60 days of when it became apparent Nurse Doe had not obtained urgent doctor attention for Ridgeway. Therefore, his August 3, 2017, grievance did not exhaust his claim against her based on that conduct.

The continuing violation doctrine does not save Ridgeway's claim. The Court of Appeals for the Seventh Circuit has accepted the "continuing violation" theory to avoid redundant grievances. The continuing violation theory, created in the statute of limitations context, views a series of failures to treat a medical condition as a single wrong that ends, for limitations purposes, when treatment is provided or the inmate is released. *Jervis v. Mitcheff*, 258 Fed. App'x 3, 5-6 (7th Cir. 2007). The theory allows a delay in the accrual of a cause of action until the date of the inmate's last injury. *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001). It allows a plaintiff to reach back for damages to the beginning of an injury "even if that beginning lies outside the statutory limitations period, when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct."

*Id.*

The Court of Appeals for the Seventh Circuit has applied this theory to relieve an inmate of the requirement to file a grievance about each instance in a defendant's series of the same continuing wrong. "In order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). In *Turley*, the theory was applied to the systemic application of a prison lockdown policy that occurred both before and after a grievance about the policy. *Id.* The Court of Appeals viewed application of the policy as a continuing violation that permitted a later-filed grievance to reach back to earlier lockdowns under the same policy. *Id.* It noted that "[s]eparate complaints about particular incidents are only required if the underlying facts or the complaints are different." *Id.*

The continuing violation doctrine does not help Ridgeway because, as noted above, he complains of a discrete instance of her conduct—her failure to obtain urgent doctor care after April 25, 2017. It would not be unreasonable to require him to file a grievance about that failure within 60 days of the time he should reasonably have known of this failure. Thus, the continuing violation doctrine simply does not apply and does not excuse Ridgeway from filing a timely grievance to begin with, which he failed to do in this case concerning Nurse Doe.

<u>Later Involvement of Nurse Doe</u>

As for Ridgeway's argument that Nurse Doe should remain in this case because she saw him after June 4, 2017—and within 60 days of filing his August 3, 2017, grievance—the Court rejects that position.

Ridgeway argues that because Nurse Doe saw him on July 13 and 19, 2017, his August 3, 2017, grievance was timely. However, he does not complain in this case about anything Nurse

Doe did in July. Indeed, by that time Ridgeway had already seen Dr. Larson, Dr. Larson had already requested an MRI, and the requests had already been rejected twice through Wexford's collegial review process. Compl. ¶¶ 17-18 (Doc. 1 at 4). And Ridgeway's medical records suggest that on July 13 and 19, 2017, Nurse Doe simply responded to Ridgeway's inquiries about getting an MRI by telling him on July 13 that the doctor had requested one but that it had not been approved and that he should follow up with the doctor as currently planned (Doc. 28-3 at 15), and on July 19 that he would have an ultrasound and physical therapy and that he should follow his current plan of care (Doc. 28-3 at 17). There is no suggestion Nurse Doe provided false information or that she had the authority to do anything else toward obtaining an MRI for Ridgeway. By this point, Dr. Larson had assumed Ridgeway's care (and any "continuing violation" by Nurse Doe had ceased), and Nurse Doe was functioning more as a messenger than as a gatekeeper for medical services, the conduct about which Ridgeway complains in his Complaint and August 3, 2017, grievance. He simply has not exhausted his remedies for any complaint about anything that Nurse Doe did in July 2017.

For these reason, after a *de novo* review, the Court will adopt the Report to the extent it recommends granting summary judgment pursuant to Federal Rule of Civil Procedure 59(f) for Nurse Doe on Count VIII on exhaustion grounds.

Having reviewed *de novo* the parts of the Report to which Ridgeway has objected and all other parts for clear error, the Court hereby:

- **ADOPTS** the Report in its entirety (Doc. 41);

- **GRANTS in part** and **DENIES in part** the defendants' motion for summary judgment (Doc. 25). The motion is granted to the extent it seeks dismissal of Count VI against Gerst and Counts II, IV, VI, and VIII against Wexford. The motion is denied in all other respects;

- **DISMISSES** Count VI against Gerst **without prejudice** for failure to exhaust administrative remedies;

- **DISMISSES** the *respondeat superior* claims against Wexford in Counts II, IV, VI, and VIII **with prejudice**;

- **DISMISSES** Count VI against Gerst and Count 8 against Nurse Doe **without prejudice** pursuant to Federal Rule of Civil Procedure 56(f) for failure to exhaust administrative remedies; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

This order does not terminate any defendant from this case.

The Court further **GRANTS** the motion to amend the scheduling order (Doc. 44) and will enter a new schedule by separate order.

**IT IS SO ORDERED.**
**DATED:   February 4, 2020**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
