IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ANTIONE R. RIDGEWAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   18-cv-1970-RJD |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| DENNIS LARSON and GARY GERST, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

Plaintiff Antione Ridgeway, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), brings this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Big Muddy River Correctional Center ("Big Muddy"). Plaintiff alleges he suffered a torn left Achilles tendon for which he was denied adequate and timely medical treatment.

Plaintiff is proceeding in this action on the following claims:

Count I:     Medical malpractice claim against Defendants Dr. Larson and Wexford Health Sources, Inc. ("Wexford").

Count II:    Eighth Amendment deliberate indifference claim against Defendant Dr. Larson.

Count V:     Medical malpractice claim against PA Gerst and Wexford.

Count IX:    Eighth Amendment deliberate indifference claim against Wexford.

Count X:     Medical malpractice claim against Wexford.

Now before the Court is Defendants' Motion for Summary Judgment (Doc. 58) and Defendants' Motion to Strike or Seal (Doc. 67).   For the reasons set forth below, the Motion for

Page **1** of 14

Summary Judgment is **GRANTED IN PART AND FOUND AS MOOT IN PART**, and the

Motion to Strike or Seal is **GRANTED** as to the request to strike.

## <u>DEFENDANTS' MOTION TO STRIKE OR SEAL (Doc. 67)</u>

Defendants ask that Exhibit C, a purported partial Wexford policy appended to Plaintiff's

responses to Defendants' Motion for Summary Judgment and Motion to Bar Dr. Nord's testimony,

be stricken as it was never properly disclosed during discovery and there are questions as to its

authenticity and admissibility.   Defendants ask that if the Court declines to strike said document,

that it be filed under seal.   In support of this request, Defendants assert that if the record is what

Plaintiff purports it to be, then it is a confidential, proprietary business record.

Plaintiff has not responded to Defendants' motion.   Pursuant to Local Rule 7.1(g), the

Court deems Plaintiff's failure to file a timely response to be considered an admission of the merits

of the motion.   As such, the Court finds this record was not disclosed by Plaintiff during discovery

and Plaintiff has not set forth sufficient information regarding its authenticity to allow the Court to

rely on the same.

Pursuant to Federal Rule of Civil Procedure 26(e), a party who has made a disclosure under

Rule 26(a) or who has responded to a request for production must supplement or correct its

disclosure or response "in a timely manner if the party learns that in some material respect the

disclosure or response is incomplete or incorrect, and if the additional or corrective information

has not otherwise been made known to the other parties during the discovery process or in

writing."   Fed.R.Civ.P. 26(e)(1)(A).   If a party fails to comply with Rule 26(e), "the party is not

allowed to use that information … to supply evidence on a motion, at a hearing, or at trial, unless

the failure was substantially justified or is harmless."   Fed.R.Civ.P. 37(c)(1).   Based on the

record before the Court, there is no indication Plaintiff's failure to disclose the purported Wexford

policy at issue was substantially justified or is harmless.   The Court also finds the mention of the record at issue during Dr. Nord's deposition to be insufficient to comply with Rule 26(e).   As such, pursuant to Rule 37(c)(1), Exhibit C captioned "Orthopedic Surgery Guidelines" and appended to Plaintiff's Response to Motion for Summary Judgment (Doc. 65) and Plaintiff's Response to Motion to Bar Dr. Nord's Testimony (Doc. 66) is **STRICKEN**[1].

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 58)

### Factual Background

On April 23, 2017, Plaintiff was injured while playing basketball at Big Muddy River Correctional Center ("Big Muddy") (Deposition of Antione Ridgeway, Doc. 57-1 at 41).   Plaintiff asked an officer to take him directly to the healthcare unit, but the officer refused and told Plaintiff "you know the routine, put in the sick call [sic]" (*Id.* at 42).   Plaintiff put in for sick call that night, and was seen by a nurse on April 25, 2017 (Doc. 57-1 at 48; *see* Plaintiff's Medical Records, Doc. 59-2 at 82).   The nurse noted Plaintiff had swelling, bruising, and limited mobility in his ankle (*see id*).   Dr. Larson attests the nurse contacted him and he ordered Motrin for Plaintiff's pain and inflammation, crutches, and a follow-up with either himself or a physician's assistant the same week (Affidavit of Dennis Larson, M.D., Doc. 59-7 at ¶ 5).   A nursing note indicated that Plaintiff refused the crutches (*see* Doc. 59-2 at 83).   There is also a signed Medical Refusal Form indicating the same (*see id.* at 327).   Plaintiff does not dispute that he was provided with pain medication on April 25, 2017; however, he testified he was not provided crutches and asserted he never signed a refusal form for the same (Doc. 57-1 at 52-53).

On April 27, 2017, Plaintiff saw Gary Gerst, a Physician's Assistant, for the first time

---

[1] As set forth below, the Court finds as moot Defendants' Motion to Bar Dr. Nord's Testimony.   This decision, however, does not obviate the Court's consideration of Defendants' motion to strike the exhibit at issue.

regarding his basketball injury (Doc. 57-1 at 55; *see* Doc. 59-2 at 84).   Gerst is not a doctor or an orthopedist.   Gerst examined Plaintiff and noted nontender 5th metatarsal, tenderness and inflammation distally and inferior medial malleolus (below and behind) in his ankle with mild bruising and no edema (*see id.*).   Gerst found Plaintiff had good strength and full range of motion in his left ankle, and a mildly antalgic gait (limp).   Gerst assessed that Plaintiff could have a left ankle injury.   Gerst ordered an x-ray of the left ankle, ibuprofen for pain, crutches with instructions for Plaintiff not to bear weight on his left lower extremity, and a follow-up appointment after the x-ray was performed (Affidavit of Gary Gerst, Doc. 59-6 at ¶ 5; *see* Doc. 59-2 at 84).   Plaintiff does not dispute that Gerst ordered crutches, Ibuprofen, a follow-up appointment, and that he directed Plaintiff not to put weight on his ankle (Doc. 57-1 at 58). However, Plaintiff testified that Gerst did not examine his leg or ankle (*Id.* at 58-59).   According to Plaintiff, after Plaintiff explained his injury and indicated he thought it may be a torn Achilles tendon, Gerst only told him that he could not have walked into the room if he had such an injury (*Id.*).

Plaintiff's left ankle x-ray was performed on May 3, 2017 (*see* Doc. 59-2 at 85, 289).   The x-ray showed mild soft tissue swelling at the medial malleolus, no acute fracture or dislocation, and enthesophyte (new bone) at the Achilles tendon (*see id.* at 289).   It was also noted that the examination was limited because an oblique radiograph was not performed, and, given this limitation, no acute fracture or dislocation was seen (*see id.*).   Plaintiff saw Gerst again on May 30, 2017 and discussed the finding of the x-ray (*see* Doc. 59-2 at 86).   Gerst also referred Plaintiff to Dr. Larson for a second opinion (Doc. 59-6 at ¶ 10).

Dr. Larson first saw Plaintiff on June 6, 2017 for his basketball injury[2] (Doc. 57-1 at 61; *see* Doc. 59-2 at 88).   Dr. Larson performed a physical examination and palpated (felt) a defect in Plaintiff's Achilles with "moderate swelling and active range of motion up and down with ankle." (Doc. 59-7 at ¶ 10). Dr. Larson assessed that Plaintiff may have an Achilles injury, and recommended an MRI of Plaintiff's ankle (*Id.*; *see* Doc. 59-2 at 88).   The request for an MRI was denied by Dr. Ritz during Wexford Health Sources, Inc.'s collegial review on June 14, 2017 (*see* Doc. 59-2 at 163).   Dr. Ritz directed that Plaintiff's ankle be x-rayed again and that his case re-presented in two weeks or less (*Id.*).   It is not clear if another x-ray was performed.   On June 26, 2017, Dr. Larson resubmitted Plaintiff for an MRI of his ankle (Doc. 59-7 at ¶ 11; *see* Doc. 59-2 at 165).   The request was again denied by Dr. Ritz because the x-rays had not been retaken (*see* Doc. 59-2 at 166).   Dr. Ritz directed that the ankle films be retaken in an attempt to "get better quality" and the case be re-presented in two weeks or less (*see id.*).   Another request for an MRI referral was denied on July 13, 2017 (*see* Doc. 59-2 at 170); however, an alternative treatment plan for an ultrasound was approved (*see id.* at 172).   The ultrasound of Plaintiff's ankle was completed on July 24, 2017, and showed "markedly abnormal appearance of the Achilles tendon on the left side" (*see id.* at 291).   Following the ultrasound, Dr. Larson again resubmitted his request for an MRI for Plaintiff, and it was approved in collegial review on August 10, 2017 (*see id.* at 174).   An MRI was performed on August 15, 2017, which showed a tear of the Achilles tendon with granulation (new tissue indicative of healing) (Doc. 59-7 at ¶ 12; *see* Doc. 59-3 at 4).

On August 18, 2017, Plaintiff saw Dr. Froehling, a non-Wexford orthopedist at the Neuromuscular Orthopaedic Institute (Doc. 59-7 at ¶ 13; *see* Doc. 59-3).   Dr. Froehling indicated the MRI showed "evidence of a 50% thickness tear of the Achilles tendon."   Upon examination,

---

[2] Dr. Larson had only communicated via telephone with the nurse regarding Plaintiff's injury on April 25, 2017.

Dr. Froehling noted that Plaintiff had "fairly good push with his left ankle" and there was about sixty percent of the tendon intact at the time.   Dr. Froehling noted that it was a "healing Achilles tendon tear" and "[a]t this point, conservative treatment is indicated."   Dr. Froehling wrote that he did not think Plaintiff would benefit from any surgical intervention at this time and that Plaintiff should wear a tibial cast brace when ambulatory.   Plaintiff was to follow-up in six weeks (*see* Doc. 59-3 at 4).   Plaintiff testified that he asked Dr. Froehling if he was going to have surgery, and was told that he should have received surgery within seven days of the injury (Doc. 57-1 at 71).

Plaintiff saw Dr. Larson on August 23, 2017 (Doc. 59-7 at ¶ 15; *see* Doc. 59-2 at 106).   Dr. Larson ordered Tylenol, renewed Plaintiff's low bunk permit, and ordered a follow-up with Dr. Froehling (*Id.*).   Dr. Larson noted Plaintiff was not wearing his orthopedic boot and was instead wearing gym shoes (*Id.*).   Plaintiff, however, testified that he wore his orthopedic boot daily (Doc. 57-1 at 72, 74-75).

Plaintiff saw Dr. Froehling for a follow-up on October 6, 2017 (Doc. 59-7 at ¶ 16; *see* Doc. 59-3 at 4).   Dr. Froehling again noted Plaintiff had a palpable defect in his left Achilles tendon, but remarked that it "feels like the defect is filling in and things are looking pretty stable."   Dr. Froehling discontinued bracing and noted that he did not see Plaintiff immediately "so at this point there is no surgical indication" (*see id.*).   Dr. Froehling recommended physical therapy for modalities, stretching, and strengthening (*see id.*).   Plaintiff received a six-week course of physical therapy at Big Muddy, which helped "a little bit" (Doc. 57-1 at 77-78).

Plaintiff testified he has not made any further complaints to the healthcare unit about his ankle because he realizes there is nothing they are going to do about it (Doc. 57-1 at 83).   Plaintiff testified it is sore and limits his movement, but does not cause him pain (*Id.*).   Plaintiff tries to stay physically active and paces in his cell for about an hour a day trying to get 10,000 steps a day (*Id.*

at 20).   Plaintiff no longer plays basketball, but does upper body weight workouts (*Id.* at 21, 29). Plaintiff also engages in his physical therapy exercises, such as calf raises (*Id.* at 27).

## Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323.   Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).   A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248).   In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party.   *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## Discussion

### I.   *Deliberate Indifference*

#### a.   *Dr. Larson (Count II)*

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment.   *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).   In order to prevail on such a claim, Plaintiff must show first

that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).

With regard to the first showing, the following circumstances could constitute a serious medical need: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.*, 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

A prisoner must also show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'." *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823, F.2d 1068, 1072 (7th Cir. 1987). Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. A plaintiff does not have to prove that his complaints were "literally ignored," but only that "the defendants' responses were so plainly inappropriate as to permit the inference

Page **8** of **14**

that the defendants intentionally or recklessly disregarded his needs." *Hayes,* 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).

Here, Plaintiff contends Dr. Larson was deliberately indifferent when he failed to see Plaintiff in a timely manner after his injury, despite Plaintiff displaying a classic presentation for an Achilles tendon rupture — playing basketball, hearing a pop, feeling immediate pain, and falling to the floor.   Plaintiff also asserts Dr. Larson was deliberately indifferent when he failed to secure an MRI immediately upon examining Plaintiff, and when he failed to refer him to an outside physician, even if the seven-day window for surgical treatment had already passed.

It is undisputed that Dr. Larson was first involved in Plaintiff's treatment when a nurse notified Dr. Larson of Plaintiff's injury on April 25, 2017.   Although it is not clear precisely what information was conveyed to Dr. Larson, the nurse's note indicates Plaintiff's injury occurred two days prior and he complained that he could not move his ankle because it "hurt so bad" (*see* Doc. 59-2 at 82).   The nurse also noted the area was bruised and swollen.   Dr. Larson ordered Motrin for Plaintiff's pain, crutches, and a follow-up for Plaintiff with either him or a physician's assistant that same week.   Even when viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could not find Dr. Larson's treatment decisions on April 25, 2017 were deliberately indifferent.   There is no evidence that Plaintiff's condition was conveyed to Dr. Larson to be of an emergency nature or that Dr. Larson would have reason to believe Plaintiff needed to be seen by another provider on an emergency or urgent basis.   Dr. Larson indicated Plaintiff was to be seen by a physician or physician's assistant that week, and he was indeed seen in two days, on April 27, 2017 by PA Gerst.   Although Plaintiff may disagree with this decision, there is simply no evidence that Dr. Larson's treatment orders were "blatantly inappropriate." *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Greeno*, 414 F.3d at 654 (quoting

*Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)).

Plaintiff also contends Dr. Larson was deliberately indifferent in failing to secure an MRI immediately upon examining Plaintiff and in failing to immediately refer Plaintiff to an outside specialist.   Again, there is no evidence in the record by which a jury could find Dr. Larson's treatment decisions amounted to deliberate indifference.   Upon his initial examination of Plaintiff on June 6, 2017, Dr. Larson assessed that Plaintiff may have an Achilles injury and recommended an MRI.   Dr. Larson's request for an MRI was denied on three occasions, and there is no indication Dr. Larson had the ability to override the decision.   Once the MRI was approved and Plaintiff was seen by Dr. Froeling, the outside orthopedist, Dr. Larson implemented Dr. Froehling's recommendations and ensured Plaintiff followed-up with Dr. Froehling in the recommended timeframe.   Although Plaintiff complains about the delay in receiving the MRI and referral to an outside specialist, he has not presented evidence that the delay was attributable to any action of Dr. Larson.   Rather, the evidence demonstrates Dr. Larson continually sought approval for an MRI, despite receiving multiple denials for the same.

Based on the foregoing, the Court finds Dr. Larson is entitled to judgment as a matter of law on Count II, Plaintiff's claim under the Eighth Amendment.

### b.   *Wexford Health Sources, Inc. (Count IX)*

Where a private corporation has contracted to provide essential government services, such as health care for prisoners, the private corporation cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself.   *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).   Thus, under *Monell*, in order for Plaintiff to recover from Wexford, Plaintiff must show that the alleged constitutional

violation was caused by: (1) an express policy that caused a constitutional deprivation when enforced; (2) a widespread practice that was so permanent and well-settled that it constituted a custom or practice; or (3) a person with final policymaking authority.   *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021).   The Seventh Circuit remarked in *Dean* that under *Monell*, a plaintiff "must show that some municipal action directly caused him to suffer a deprivation of a federal right, and that the municipality took the action with conscious disregard for the known or obvious risk of the deprivation."   *Id.* at 236.

Plaintiff alleges the process hurdles he faced due to Wexford's procedures unduly delayed his care and resulted in his inability to obtain surgery.   Plaintiff does not distinguish between delays due to fragmented care and delays due to collegial review, but both seem to be at issue.

Defendant Wexford asserts Plaintiff has not shown there is a policy not to approve surgery, and further asserts any claim that the collegial review process itself is unconstitutional fails as a matter law, citing *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647 (7th Cir. 2021).

Plaintiff has not cited any particular policy he claims caused his constitutional injury. Rather, he seems to claim the general processes by which Wexford operates in requiring sick call requests, referrals, and the like, unduly delayed his care.   The Seventh Circuit recently reiterated that "a plaintiff seeking to hold a municipality liable for a facially lawful policy generally must prove a prior pattern of similar constitutional violations resulting from the policy."   *Dean*, 18 F.4th at 236.   While the Court notes there are limited exceptions to this general rule, "the question is always whether the municipal policy reflects a conscious disregard for a known or obvious risk of the constitutional deprivation."   *Id.* at 236-37.   Here, Plaintiff has not cited any evidence of a pattern or practice of similar violations.   He did not offer substantive evidence that delays were incurred by other inmates in attempting to receive urgent care for an orthopedic injury, nor did he

present evidence that collegial review had caused unconstitutional delays for other prisoners.   In this instance, the evidence establishes Plaintiff was seen by a provider, PA Gerst, within four days of his injury.   A four day wait to see a provider does not present a "patently obvious" unconstitutional risk of delay to treat the injury presented.   *See Dean*, 18 F.4th at 237 (citing *Connick v. Thompson*, 563 U.S. 51, 64 (2011).   The fact that PA Gerst did not note the defect in Plaintiff's Achilles tendon that was subsequently noted by Drs. Larson and Froehling, and, as a result, did not seek more urgent treatment, does not demonstrate indifference on the part of Wexford.

Further, with regard to collegial review in particular, Defendants are correct in stating that the procedure is not unconstitutional on its face.   *Dean*, 18 F.4th at 236 (citing *Howell*, 987 F.3d at 659).   Here, it is clear that through the collegial review process Dr. Larson's order for an MRI was denied on multiple occasions, resulting in an approximately two-month delay for Plaintiff to receive the same.   The difficulty for Plaintiff here is, again, his failure to show a prior pattern that collegial review caused unconstitutional delays for other prisoners.   Indeed, Plaintiff only addresses his own experience.   Further, this is again not an instance where the risk of delay was "patently obvious," and the Court notes there is insufficient evidence in the record to find the delay attributable to collegial review caused Plaintiff harm.   No evidence has been submitted that surgery was an option on June 6, 2017, when Plaintiff's case was first brought to collegial review. Notably, Plaintiff's expert opined an Achilles tendon rupture should be surgically repaired within seven days of occurrence.   Based on the evidence in the record, a reasonable jury could not find that Wexford's collegial review reflected a conscious disregard for a known or obvious risk to the constitutional deprivation alleged by Plaintiff.   For these reasons, Wexford Health Sources, Inc. is entitled to judgment as a matter of law as to Count IX.

## II.    *Medical Negligence (Counts I, V, X)*

Pursuant to this Order, all of Plaintiff's Eighth Amendment claims are dismissed.   The only remaining claims are state-law medical malpractice claims against Dr. Larson, Wexford, and PA Gerst.

Generally, when all federal claims in a case have been dismissed prior to trial, the district court should decline to exercise jurisdiction over any remaining state law claims under 28 U.S.C. § 1367(c)(3).   *Redwood v. Dobson*, 476 F.3d 462, 467 (7th Cir. 2007).   This rule, however, is subject to three recognized exceptions: (1) when the refiling of the state claims is barred by the statute of limitations; (2) where substantial judicial resources have already been expended on the state claims; and (3) when it is clearly apparent how the state claim is to be decided.   *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-52 (7th Cir. 1994); *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 906-07 (7th Cir. 2007).

Here, there is not a concern regarding the statute of limitations because "[t]he period of limitations for any claim asserted under subsection (a)... shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367; *see also Artis v. D.C.* , 138 S. Ct. 594, 598 (2018) (holding that "§ 1367(d)'s instruction to 'toll' a state limitations period means to hold it in abeyance, i.e., to stop the clock").   Further, although discovery has been completed and judicial resources expended to some degree, the Court's reasoning with respect to Plaintiff's constitutional claims did not reach issues fully dispositive of Plaintiff's pendant state claims.   *See Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007).   Finally, the Court finds it is not absolutely clear how the pendant state law claims can be decided.   For these reasons, the Court dismisses the remaining state law claims for lack of jurisdictions (Counts I, V, X).

## Conclusion

Based on the foregoing, Defendants' Motion to Strike or Seal (Doc. 67) is **GRANTED** as to Defendants' request to strike, and Defendants' Motion for Summary Judgment (Doc. 58) is **GRANTED IN PART AND FOUND AS MOOT IN PART**.   The Clerk of Court is directed to enter judgment in favor of Dr. Dennis Larson as to Count II and Wexford Health Sources, Inc. as to Count IX, and against Plaintiff Antione Ridgeway.   The remaining clam are dismissed without prejudice for lack of jurisdiction.

Finally, the Court **FINDS AS MOOT** Defendants' Motion to Bar Dr. Nord's Testimony (Doc. 57).   Dr. Nord specifically opined as to whether Defendants were negligent and he does not set forth any opinion as to deliberate indifference.   As set forth above, the issue of negligence is not before the Court, and does not inform the decision on whether Dr. Larson or Wexford acted with deliberate indifference.   As such, the report was not addressed in this Order, and it is not necessary for the Court to rule on Defendant's motion.

**IT IS SO ORDERED.**

**DATED: January 13, 2022**

_s/  Reona J. Daly_
**Hon. Reona J. Daly**
**United States Magistrate Judge**